452 SUPREME COURT OF LOUISIANA.

Murray et al. vs. Succession of Spencer et al.

### On Application for Rehearing.

---

### No. 11,237.

ARTHUR H. MURRAY ET AL. VS. SUCCESSION OF JOHN SPENCER ET AL.

1. An exception of prematurity is not waived nor merged in the answer by a consent to have the same referred to be tried with the merits, particularly where the answer filed is under reservation of the exception.

2. Robert H. Short died leaving two wills, both of which were probated. By the first or Christy will plaintiffs, as his heirs-at-law, were entirely cut off. By the second or Zengel will they were also cut off save for a small special legacy. In proceedings in the Civil District Court these parties prayed that both wills be set aside—that Short be decreed to have died intestate, and that they be recognized as his legal heirs, assigning as grounds that the notaries who drew up

the wills had not complied with legal forms and requirements. On trial the Zengel will was set aside, but the Christy will was upheld. They then instituted suit against the notary who had ,drawn up the Zengel will for damages, claiming that through his negligence and want of care he had caused that will to be a nullity, carrying with it as a result the loss of their legacy.

*Held:* That having adopted the errors of the notary and sought to utilize the same for their benefit to get into position as heirs they should not be permitted, because unsuccessful in their ultimate object, to turn back upon the notary for damages.

APPEAL from the Civil District Court for the Parish of Orleans. *Ellis, J.*

*F. Rivers Richardson* and *Frank E. Rainold* Attorneys for Plaintiffs and Appellants:

A judgment is not a consent judgment because the case is submitted to the court for adjudication without argument. A judgment is rendered upon the issues as they appear from the pleadings and upon the pleadings alone.

A judgment must be considered valid and binding until reversed or set aside in a proper proceeding; no collateral attack is permissible. Kent vs. Brown et al., 38 An. 802; 36 An. 533, 831; Succession of Keller, 39 An. 579; 32 An. 896.

An appeal lies from any judgment for the term of one year from date of final judgment (Code of Practice, Art. 593), and those not parties to a judgment when their interests are affected may appeal. Code of Practice, Art. 571.

A will to be valid, in the nuncupative form, by public act, must be entirely dictated by the testator, written by the notary as dictated and in the language of the testator, read over to him in presence of the attesting witnesses and express mention must be made of the performance of these formalities. Civil Code, Arts. 1578, 1579 and 1580.

It is not sufficient that a part of the will is clothed with these formalities. It must be done in regard to the whole; hence if upon the reading of the will over to the testator he changes any portion of it, such change must be written in the language of the testator; it must state that this change was dictated by the testator to the notary and written by him as dictated, all in presence of the witnesses, and that the same was read over to him. Without the observance of these formalities, the will is a nullity. Grenier,

No. 239; Merlin Rep., V. "Testament," Sec. 2 e. par. 3, Art. I, No. 13; Toullier, Droit Civil Francais, Vol. 5, p. 416, par. 452.

A notary who executes a defective will is responsible to those whom he has damaged, and the measure of damage is the amount of the lost legacy. Rochereau vs. Jones, 29 An. 82; Wintz vs. Kramer, 44 An. 35.

The bond given by the notary is that he shall well and truly perform his duties as such. It is a guarantee of his competency to fulfil such notarial duties. Bingham vs. Bussey, 26 An. 676; Fox vs. Thebaut, 33 An. 33; Wintz vs. Kramer, 44 An. 35.

The duty of the notary is to follow the plain letter of the code, and if he does so he is certain to make no error. When he disregards these requirements and decides upon reflection that they can be omitted as to a particular portion of the will, he does so at his own risk, and it is not an error of judgment by which he can escape liabilty, but it is on the contrary culpable carelessness. Wintz vs. Kramer, 44 An. 35.

The amount of the estate having been proved by the inventory and oral evidence to be largely in excess of the debts of the estate, the presumption is raised that the plaintiffs would recover their entire legacy, and this presumption not having been rebutted, the matter stands as proved.

The liability of the notary and his bondsmen for damages on account of the loss of the legacy arose as soon as a judgment was rendered annulling the will made by him; the plaintiffs are not compelled to wait the final winding up of the estate if other evidence can show the amount of the damage. Wintz vs. Kramer, 44 An. 35.

A legacy of a sum of money is a a legacy of personality and is hence governed by the *lex domicilii* and not the *lex rei sitæ*. Succession of Malone, 2 R. 382.

All parties to a suit are bound by the decree even if other proceedings are instituted in other States. Am. and Eng. Ency. of Law, Vol. 12, p. 149 c. and authorities, and Vol. 13, p. 15 and notes.

The primary probate at the domicile of the deceased makes probates in other States ancillary to this primary probate, and after administration the funds of the ancillary administration must be turned over to the primary administration. Am. and Eng. Ency. of Law, Vol. 3, pp. 640, 651.

The exception of prematurity is abandoned when referred to the merits by consent of defendants.

An action of this character arises as soon as the title to the legacy is discovered to be null and void.

The prematurity *vel non* of this action is not dependent upon whether succession of Short has been or ever will be administered.

---

*Henry P. Dart* Attorney for Defendants and Appellants:

Under the French law amendments and alterations to a testament are governed by a special statute, describing the duties of notaries in the minutest detail, and the Civil Code does not contain any provisions relative to such matters.

When it appears from the will that it was read to the testator in the presence and hearing of the witnesses, it matters not what way this fact is expressed or in what portion of the testament this declaration is contained.

A notary should only be held in damages for defects of form in case of fraud or grave fault, or such gross negligence that might be attributed to bad faith, or when he acts in violation of a plain textual provision of the law.

The notary is evidently excusable and should be discharged of all responsibility when the question is on a point of law on which there is difference of opinion and of jurisprudence, and unless the circumstances are gravely against the notary his cause should be favored.

The punishment should be in proportion to the wrong, and it would be out of proportion if a simple inadvertence would result in a condemnation that would ruin the notary.

If a notary is held in damages in every case, the slightest error or merest inadvertence would be punished as severely as the gravest fault.

A notary should never be held in damages for an error of judgment when he has been called upon to act on a doubtful point of law.

No one should be permitted to profit by his own wrong, and where he has consented to or contributed to the act which occasions the loss, he should not be permitted to maintain an action in damages.

This rule is especially applicable when the party acts after mature deliberation and perfect freedom in exercising his will.

If a party prays for a judgment he should not be permitted to claim damages for a resulting loss which he has sustained from the judgment rendered in accordance with the prayer of his petition

If a person voluntarily consents to an injury he ought to be made to bear the loss.

Where a decedent leaves property in several States, and his will is annulled in Louisiana, and the will is good in the other States, the legatees should not be permitted to hold the notary for damages until they have exhausted every means to have their legacies satisfied out of the property located in the other States.

The property of a decedent in every State forms a separate succession, and can be administered in the different States irrespective o' the domicile of the testator.

A notary can not be held in damages for an alleged loss of legacy until the estate of the decedent is settled and the amount of the damage is definite and final, and particularly should this rule apply when the property of the testator in the other States has not even been sold.

In the absence of such definite evidence fixing the actual amount of loss, an exception of prematurity should be maintained.

---

*Henry C. Miller*, as *Amicus Curiæ*, submits a brief:

Robert H. Short, deceased, left a last will dated April 19, 1888, and a paper purporting to be a will of date December 29, 1888.

It was claimed that the testator was *non compos mentis* when the April will was made and that the December paper was void as a testament, because, being nuncupative in form by public act, the certificate of the notary was defective.

The court sustained the April will and set aside the December will on the ground of the defective certificate. The executor thereupon qualified and proceeded with the administration, selling a portion of the property and discharging to a great extent the debts of the succession.

The present plaintiffs, named as legatees under the December will, bring this suit against the notary and his sureties, claiming damages by reason of the judgment setting aside said will on account of the defective certificate. The same judge who rendered the

---

*NOTE.—This brief was filed in court before Mr. Miller was appointed Associate Justice.—REPORTER.

judgment maintaining the April will determined this cause in favor of the notary and his sureties, and holding the certificate to the December paper sufficient, and that it was valid as a will. The executor is embarrassed by this last opinion of the lower court. If the December paper is good as a will, the April will first sustained by the lower court is superseded because of earlier date. If this last opinion is to prevail, then the action of the executor under the April will is apt to give rise to complications. Both in regard to his past and future course, the executor has an interest in the question arising on this appeal of the validity of this paper of December. He asks to be allowed to submit this brief. He has no concern in the issue between the plaintiffs and the notary. This brief is not filed to support any case the plaintiffs may be deemed to exhibit against the notary; but it is submitted to show that the paper of December, asserted to be the will, was of no effect because the last dispositions which the eccentric testator added at the moment of signing, changing radically his previous dispositions, are not embraced in the certificate of the notary. Indeed, as the paper itself shows, the closing dispositions were never dictated or written by the notary, or read to the testator in the presence of the witnesses.. The executor desires the cloud cast on his administration by this last opinion, holding valid this December paper, removed.

The certificate of the notary to the nuncupative will received of him must show that every disposition of the testator was dictated by him, written by the notary as dictated and read to the testator; that this dictation, writing and reading were in the presence of the witnesses, and of all these requisites the certificate must make express mention, no proof being admissible to supply any omission of the certificate. Civil Code, Arts. 1578, 1647; 5 Toullier, p. 416, pars. 432, 433; 3 Troplong, p. 111, par. 1561; 1 Dalloz (les Codes annotes), p. 802, Nos. 306, 307; 1 Robinson, p. 48; 12 Robinson, p. 29; 16 Louisiana, p. 80; 12 Robinson, p. 35.

It follows that the certificate is defective, when it does not extend to each and every disposition of the will, as for instance in this case when after the dictation, writing and reading of the dispositions, and after the mention of these formalities, the testator adds other dispositions at the moment of signing, not certified to have been dictated or written or read. *Ibid.*, specially 5 Toullier, p. 417, par. 432.

The nuncupative will by public act is in law the entire testamentary paper as it is written by the notary. It can not be good as to part and void as to the remainder. If the certificate fails to show that all the dispositions in the paper were dictated by the testator, written by the notary as dictated, and then read, all in the presence of the witnesses, the nullity is not only of the dispositions not certified as required by the code, but all the dispositions are annulled, and there is no will. 5 Toullier, p. 417, par. 432; 3 Troplong, p. 111, par. 1562; 1 Dalloz (les Codes annotes), p. 802, No. 313; Sirey (les Codes annotes), p. 241, No. 50.

*Charles S. Rice, Amicus Curiæ*, presented an oral statement.

*F. Rivers Richardson* and *Frank E. Rainold* for Appellants, in reply and on application for a rehearing:

The evidence shows that there should be judgment for plaintiff for two thousand five hundred and twenty-five dollars and sixty-one cents, and in no event less than two thousand three hundred and sixty-eight dollars and five cents.

The act which occasioned the injury was the faulty confection of a will by defendant notary. It was impossible for plaintiffs to have been guilty of contributory negligence, nor does the maxim *"Volenti non fit injuria"* apply to them.

As far as the rights of plaintiffs are concerned the will is governed by the laws of Louisiana; the legacy of a sum of money being a "|personal" or "movable" right.

The courts having jurisdictions of the auxiliary succession proceedings applied the law of Louisiana and annulled the Zengel will for want of form. They did not err in following the judgment of the court of the domiciliary succession.

Estoppel, like prescription, to avail a defendant, must be specially pleaded. The plea can not be supplied by the court. 33 An. 748.

Where no injury to the rights of defendant have resulted from the actions or declarations of plaintiff, there can be no estoppel. The vitality of the plea depends upon injury.

To constitute estoppel by record the allegations must be contradictory and the litigants the same.

Murray et al. vs. Succession of Spencer et al.

To constitute equitable estoppel the party pleading it must have been injured.

The judgment of the lower court being one absolutely in favor of defendants, and this being the judgment brought before this court for review, the court in amending the judgment in favor of the minor plaintiffs so far as to non-suit them must determine whether or not they have a cause of action. To do this, the validity of the will must be setted. If it is void, the minors have no cause of action, and the judgment of the lower court should not be amended. It is error not to have passed upon this question.

It is error not to have determined how the costs of appeal should be apportioned, the judgment of the lower court having been reversed in part.

The opinion of the court was delivered by

NICHOLLS, C. J.   Plaintiffs represent that Fred. Zengel is a notary public in and for the parish of Orleans, and was such on the 29th of December, 1888, at which time he received the last will and testament of Robert H. Short, who formerly resided in New Orleans and died on the 11th of August, 1890, in which said will the said deceased gave and bequeathed to Mrs. Virginia T. Murray, widow of Joel T. Murray, or her heirs in case he survived her, the sum of three thousand dollars.

That on the 22d of May, 1890, and before the death of Robert H. Short, Mrs. Virginia T. Murray died, leaving as her heirs Arthur H. Murray, Mrs. Juliette Murray Jones, and the issue of a predeceased daughter, Mrs. Mary W. Murray, to-wit: the minors Arthur Murray Dargan, Cornelia Alice Dargan and Bertie Lucy McDonald, all of whom are plaintiffs herein, and are the parties described as the heirs of Mrs. Virginia T. Murray in the said testament, and would be hence entitled to the said legacy.

That the said will was duly probated on the petition of Philip S. Sims, named as one of the testamentary executors in the will, on the 13th of August, 1890. That thereafter Mrs. Margaret Short Moran, a legatee of R. H. Short, filed a suit to annul the will, on the ground that the said notary had failed to clothe the will with the formalities required by law, and especially because after a greater portion of the said will had been dictated by the testator to

the notary, and having been read over to the testator and the testator having changed certain dispositions and added a modification or an amendment to the will, bequeathing the residue of his estate after discharging the legacies therein named to all the legatees named therein, share and share alike, the notary failed to clothe said amendment or modification with any of the requirements of law, and by reason of the said fatal defects the said will was a nullity. That plaintiffs were cited, among others, as defendants in said suit, and after due proceedings said will was annulled and avoided solely by reason of the fatal defects of form appearing on the face thereof, due wholly to the fault and want of care on the part of the notary, which judgment is now final. That when the notary executed the said will, William R. Richardson and John Spencer, now deceased, were the sureties of the said notary on his notarial bond, on which bond the said Fred. Zengel, notary, bound himself as principal in the sum of five thousand dollars, and each of the sureties in the sum of twenty-five hundred dollars.

That by reason of the fault, negligence, imprudence, want of skill and inattention to his business, and the deplorable omissions in failing to clothe the will with the requirements of law, which the said Robert H. Short had a right to expect by reason of the said Zengel's reputation as a competent notary, the will was a nullity, and was so declared by judgment of court, and petitioners were damaged in the full sum of their so lost legacy.

That John Spencer, one of the sureties, has died, and his succession is represented by the said Fred. Zengel and John Lynch as executors. .

That under the law the said notary is liable for said damage and injury; that the surviving surety, Richardson, is liable *in solido* with him up to the sum of twenty-five hundred do lars, and that the succession of Spencer is liable *in solido* up to the sum of twenty-five hundred dollars.

They pray for judgment against Zengel for three thousand dollars and for judgment for the sum of twenty-five hundred dollars against Richardson, and for a like amount against the succession of Spencer, with legal interest from date of judgment.

Defendan s excepted—first, that the demand was premature, and, second, that the same sets forth no cause of action.

Plaintiffs then filed a supplemental petition, in which, reitera ing

their averments as first made, they further alleged that the succession of Short is perfectly solvent, and had the will of the deceased executed before the said notary not been annulled by decree of court, they would have received the full amount as stipulated in the said will th·t they shoul'l be entitled to—that even had the court failed to annul the will for the reason more particularly set forth in the petition, still the said will was an absolute nullity because the notary had failed to clothe iჿ with the formalities required by law, in that it was not written by the notary as dictated by the testator, which said fact the notary has himself testified to in the contest of said wills of the deceased, in which he was examined as a witness, all of which was due wholly to the fact of the negligence and want of skill of the said notary, as was more fully set forth in the or ginal petition.

By consent. of counsel the exceptions were referred to be tried with the merits.

Defendants, under reservation of their exceptions, answered, pleading first the general issue; further answering the defendant, Zengel, said that it is true he made the will complained of, but that he took down and wrote the will exactly as it was dictated by the testator, and that he did not fail or omit to comply with all the formalities of law, and he specially denied that the will in question was invalid, or that the same has ever been held to be invalid by any court or in any case, except in a consent proceeding, and he specially denied that the plaintiffs have suffered any loss whatever as the result of the making of the will, and that in the event that the e should be an error in the confection of said will, then he pleaded the same was an error of judgment, and not want of skill, or negligence in the confection of the will.

Judgment was rendered in the District Courჾ in favor of the defendants, and plaintiffs have appealed.

Robert H. Short died in the city of New Orleans on the 11th August, leaving no ascendants or descendants, but certain collateral relations who, in the absence of the testamentary dispositions by him, would have been his legal heirs.

These parties were (1) the plaintiffs, who are the children of *Virginia Thomas Short*, a predeceased sister, who was the *widow of Joel Murray;* (2) a half sister, Juliette Brown, widow of R. S. Simms; (3) the descendants of William H. Brown, a predeceased half-brother; (4) the representatives of Richard Brown, a predeceased

half-brother; (5) the representatives of John Short, a predeceased half-brother.

Robert H. Short had, however, executed two wills by notarial acts—one before Geo. W. Christy, notary, on the 19th day of April, 1888; the other on the 29th December, 1888, before Frederick Zengel, notary.

In each will his entire estate was disposed of. In that of 19th April, 1888, known as the " Christy " will, he bequeathed, after payment of the special legacies therein made, "the residue of his property" to the Christian or Campbellite church, at Hopkinsville, Ky., and to the Baptist church at the same place.

In the second will, known as the Zengel will, he at first bequeathed, after the special legacies therein made, "the remainder of his estate" to his nephew, Philip Short Sims, but before signing his name " declared to the notary, in presence of the witnesses, that he amended and modified his will as before written, by bequeathing the remainder and residue of his estate, after the discharge of the legacies therein made, in equal shares and interests to all of the therein-before named legatees, to be possessed by them share and share alike."

Both of those wills were probated by the Civil District Court.

The deceased left considerable property, real and personal, in Louisiana, and real estate in Tennessee, Alabama and Kentucky.

Mrs. Margaret Short Moran, wife of William J. Moran, who was a legatee in the Christy will for four thousand dollars, and in the Zengel will for two thousand dollars, instituted an action to which all parties holding adverse interests were made defendants, asking the annulment of the Zengel will and the recognition and enforcement of that executed before Christy.

The plaintiffs and appellants herein filed an answer in that case, in which they say " for answer to the petition of Mrs. Margaret Short Moran to annul the writing purporting to be the will of Robert Short, dated December, 1888, they admit that said public act passed before Fred. Zengel, notary, is null and void and of no effect, because (1) all of its dispositive provisions were not dictated by Robert Short to the notary in the presence of the witnesses, nor (2) were all of the provisions written by the notary as dictated in the presence of Robert Short and in the presence of three witnesses, nor (3) were all of its dispositive provisions read aloud to Robert Short

by the notary in the presence of three witnesses, observing all these formalities without interruption and without turning aside to other acts, and these respondents admit that the said act of 19th April, 1888, is null and void, and pray that it be so decreed, and they deny all the other allegations of the petition of the said Margaret Short Moran, and they aver that the said Robert Short died intestate. * * * Now these respondents show that the writing of 29th December, 1888, purporting to be the last will and testament of Robert Short, is null and void and of no effect, not only for the fatal defects of form already alleged but also because he was not of sound and disposing mind and memory at the time of the execution of the said instrument, and was insane at that time and was under the control of the will of another. They further allege that the writing purporting to be the last will and testament of Robert Short, passed before George W. Christy, is null, void and no effect, and should be so decreed, and the demand for its execution rejected.'"

The answer, after enumerating a number of objections in the preparation of the will, closes by alleging that at the time of the making of the same Robert Short was not of sound and disposing mind and memory; that he was insane and incapable of making a will. It then proceeds as follows: "And these appearers assuming the attitude of plaintiffs in reconvention against Mrs. Margaret Short Moran pray that her demand for the annulment of the will of 29th December, 1888, be granted, and that her demand for the establishment of the will of 19th April, 1888, be rejected, and said act be declared null and void and of no effect, and that it be decreed that Robert Short died intestate, and that your petitioners (naming each of the present plaintiffs) be recognized as his heirs."

They prayed for citation to the attorneys of absent heirs, the various legatees, the executor of the will of April 19, 1888, and the executor of the will of 29th December, 1888, and that petitioners have judg ment in conformity to their allegations, and rejecting both wills.

Some of the parties cited submitted the issues raised in the pleadings of the plaintiff, Mrs. Moran, and of the reconventional demand to the decisions of the court; others filed general or special denials, or made special admissions, as their different interests dictated.

The District Court upon these issues adjudged the Zengel will null, but upheld that executed before Christy—dismissing the reconventional demand.

In his reasons for judgment, the district judge disposed summarily of the Zengel will by the statement that "the will of December 29, 1888, is conceded by all parties to be of no effect."

The succession of Robert H. Short has not been closed; it is still under administration in the District Court. The rights of parties have not yet been definitely ascertained and fixed. In the present proceeding the District Court upheld the validity of the Zengel will, which it had before pronounced of no effect—the judg᠔ in his judgment stating, as he did in his testimony taken in the case, that the first judgment was substantially, in his opinion, a consent decree; that acting upon that hypothesis he had not given the will the consideration and thought which he would have done had it been contested in the first as it was in the last case; that had the matter been presented to him originally as it was afterward, he would have sustained and not rejected the will.

The first position contended for by the plaintiffs and appellants is that the exception of prematurity filed by the defendants is not before us, it having been abandoned by consent.

The second is that "prematurity *vel non* of the action is not dependent upon whether the succession of Short has been or ever will be administered."

The exception was not waived. The record entry states "that by consent of counsel the exceptions are referred to be tried with the merits," and the answer filed was "under benefit and reservation of the exceptions."

A consent that they should be "tried" with the merits does not, under such circumstances, merge them into the answer.

Were appellants' contention in their first point true, they would have still to maintain the correctness of the second, which is "that their right of action arose when Mrs. Moran brought suit to annul the Zengel will and had the probate and the will set aside; that whether or not plaintiffs had established the amount of their loss was another question. That the act which occasioned their loss and gave them a cause of action was the fault of the notary in failing to make a valid will."

We do not think that the act of a notary in failing to comply with the formal requirements of the law in the preparation of a will, carrying with it as a result the rejection of the will, gives rise neces-

sarily *per se* to an action against the notary by a party named as a legatee in the rejected will. The setting aside of the instrument would in many instances enure to the benefit instead of to the injury of the legatee. The case at bar is itself an instance of the truth of this statement. The plaintiffs here, as heirs at law of the deceased, would receive a large portion of his estate if he should be held to have died intestate, whilst the upholding of the will would take from the heirs the entire succession, leaving them special legatees for a trifling amount. But for the fact of the existence of the prior will of April 19, 1888, plaintiffs' obvious interests were that the Zengel will should be declared null, and even with the Christy will s anding between them and their position as legal heirs, they deemed the Zengel will an obstacle in the way of those interests, and sought by affirmative action to get rid of it.

Plaintiffs' conduct indicated a rejection of the legacy made to them in the Zengel will. The attack upon that instrument was part of a general plan to get into position as legal heirs of Robert Short, through a repudiation of and setting aside of both wills.

We th nk that where a will has failed of probate by reason of the fault of a notary in the drawing of the instrument, a person who predicates an action upon that fact must also allege and prove injury. Injury must concur with error, and the extent of the injury would be the measure of the plaintiffs' rights. It matters little practically in this case whether we deal with the question of prematurity from the standpoint of an exception taken to the action or that of a failure by the plaintiffs to allege and prove a condition of affairs giving rise to the action and entitling them to a judgment. There is no claim or pretention in plaintiffs' petition that the succession of Robert H. Short has been settled and the rights of parties finally ascertained and fixed. It is true plaintiffs in one allegation aver as a conclusion that they have been damaged to the extent of their legacies, but there is no fact stated, save the fact itself of the setting aside of the will and a declaration that the succession of Short is solvent, on which such a conclusion could be based. The solvency of the succession is anything but certain. We do not feel warranted in the present situation of the Short estate, and under the pleadings, in examining into and adjudicating piecemeal upon the issues raised in this litigation. It will be time enough to do so as a whole when we will have to deal with facts and not conjectures.

What we say here has reference to. the claim set up on behalf of the minors. .

We. have enough before us to pass finally upon the claims of Arthur H. Murray, advanced individually. by him, and those of Mrs. Juliette Murray, wife of Philip S. Jones.

We are of the opinion that those parties by seeking to avail them-selves of. the alleged errors of the. notary. against the other legatees under the Zengel will, and as part of a, general plan to get into posi-tion as heirs of Robert H. Short, should not, though their efforts proved futile by reason of the prior will, be permitted to subsequently turn back upon the notary, whose errors they had deemed beneficial and had sought to utilize in their own behalf as instruments of attack. Plaintiffs cite us to the principle announced in the decisions quoted in the American and English Encyclopedia of Law, Vol. 7, Note 2, Verbo "*Estoppel,*" to the effect that parties are not bound by allega-tions *unsuccessfully* pleaded.   We do not think that principle appli-cable to this case.   It may be that when parties attack a will for fraud, for insanity, or on other grounds, and fail in their attack from resistance made, they can still claim the benefit of any provision in their favor to be found in the will, as estoppel would meet estoppel, but we do not think the doctrine goes to the extent contended for here.   We think it perfectly clear that it was the desire, the interest and the intention of the major heirs to free themselves from the effect of both wills.   To that end in furtherance of that object they affirmed and adopted, and by so doing condoned, the errors (if such they were) of the notary.   They can not be allowed to repudiate now as wrongful and injurious that which they had previously availed themselves of. and advanced and relied upon and sought to utilize as a basis for acquiring beneficial rights.

In examining the record we notice that while Mrs. Juliette Murray, wife of Philip. S. Jones, was, by the Zengel will, made a legatee for five hundred dollars, she is by the Christy will a legatee for one thousand dollars.

For the reasons herein assigned it is ordered, adjudged and decreed that the judgment appealed be and the same is hereby affirmed in so far as it concerns Arthur H. Murray individually, and Mrs. Juliette Murray Jones, wife. of Philip S. Jones.

It is further ordered, adjudged and decreed that as concerns the minors Arthur Murray Dargan, Camelia Alice Dargan and Bertie

Lucie McDonald, the judgment appealed from be and the same is hereby annulled, avoided and reversed, and it is now ordered, adjudged and decreed that there be judgment against the said minors on their demand as in case of non-suit.

Miller, J., recused.

Rehearing refused.