This is a suit under the Workmen's Compensation Act, Act No. 20 of 1914, as amended, wherein it is alleged that on May 9, 1941, plaintiff sustained an injury in the course and scope of his employment by W. Horace Williams Company at Camp Polk, Vernon Parish, Louisiana, while carrying a heavy metal door. Plaintiff alleges that while so carrying the metal door he was under a severe strain and that he felt a keen stinging pain in the lower side of his abdomen and was forced to discontinue his work and go to his home because of the severe pain experienced from this strain; that because of his suffering he was unable to rest at home, and went immediately to the Leesville Hospital for treatment and later to the hospital at Camp Polk; that the injury produced an inguinal hernia, from which he has been disabled since the date of the accident from doing the kind of work for which he is qualified by training and experience. Plaintiff's suit for total permanent disability for a period of 400 weeks at $17.16 per week, being 65% of his weekly wage.
The defendant first filed a plea of prematurity, which was apparently overruled, as the defendant filed an answer in which he denied that the plaintiff received the injury, as he claims, and denied that he is suffering from a hernia, and in which the plea of prematurity is re-urged.
On trial of the case the district court rendered judgment in favor of plaintiff for total disability, awarding him compensation at the rate of $17.16 per week for a period not to exceed 400 weeks. From this judgment the defendant has appealed.
The first question for us to consider is the plea of prematurity. It is shown that the plaintiff was injured on the 9th of May and that he reported his injury immediately to the foreman of the defendant company. It is also shown that he was examined by the company doctor on May 14th and that this doctor prescribed treatment and advised plaintiff to return to him for further examination and treatment, which he did on the 17th and 19th. On May 20th a demand was made on defendant, by plaintiff's attorney, for compensation, but no compensation was paid, nor was any effort made to adjust the claim before the suit was filed in the latter part of May. In other words, more than one week had expired since plaintiff's demand for compensation at the time the suit was filed, and since defendant had made no effort to grant plaintiff's demand, we cannot say that the suit was filed prematurely. *Page 169 
On the merits there are only two questions of fact involved in this case: (1) whether or not the plaintiff received an injury which produced a hernia, as he claims; (2) whether or not he is disabled from performing the work for which he is qualified by training and experience. All the other questions relative to his employment, wages and other facts which would entitle him to compensation are either admitted or proved.
The plaintiff testified that on May 9, 1941, he was assisting in carrying a fireproof metal door from one part of a warehouse under construction to another part, and that the edge of the door struck him on the right side, and that when he went to let the door down he felt a stinging and burning pain. He states, further, that he was forced to leave his work and that he told the foreman that he was hurt and had to see a doctor and that the same night, after first having gone home, he went to see Dr. Reid, who examined him and that later he consulted the company doctor, who examined him several times and gave him some tablets to take and a suspensory to wear.
A Mr. Forbis testified that he was working with plaintiff on the night of May 9th and that plaintiff stated that he hurt his right side and was forced to leave his work.
There is some testimony by another witness to the effect that plaintiff tried to work in a restaurant a short time after he claims to have been injured, but that he was unable to continue with this work and would have to sit down and rest on account of pain which he experienced when he tried to wash dishes or perform other tasks connected with his duties.
The remainder of the evidence in this case is given by six doctors, namely: Drs. Reid, Sanders, Hardie, Fraser, Barkoff and Dew.
Dr. Reid corroborates plaintiff's testimony to the effect that plaintiff consulted him relative to his disability, but states that plaintiff had already been examined by the camp doctors at the time of his first visit and that he referred him back to them since their services were free and he felt that plaintiff could not afford the extra expense of examination and treatment by him. He states further that at a later date on plaintiff's request he examined him and found plaintiff to be suffering from a right incomplete inguinal hernia which incapacitated him from doing hard manual labor.
Dr. Sanders testified that he examined plaintiff during the latter part of May, 1941, and again on a later date, and his diagnosis was the same as that of Dr. Reid.
Dr. Hardie examined the plaintiff on June 7th, at the request of defendant, or its insurance carrier, and testified that he found a slight enlargement of plaintiff's inguinal lymph nodes and a weakness of the lower abdominal walls on both sides, but no evidence of hernia and that in his opinion plaintiff was not disabled from doing manual labor. It may be noted here that plaintiff testified that when this doctor had finished examining him, he told plaintiff that he "had one of those things", implying that he had a hernia, and asked plaintiff if he wanted to be operated on. The testimony of this doctor is not very clear, but apparently he denies, or intended to deny, the first part of the statement contained in plaintiff's testimony, but he admits the second part to the effect that he asked plaintiff after the examination, if he would like to undergo an operation, and moreover he does admit that he found a slight enlargement of the inguinal lymph nodes and weakness in the abdominal walls, although he denies that this condition has any relation to a hernia.
At the request of defendant, plaintiff was also examined by Dr. Fraser on June 20th, and also on the day of the trial, and this doctor testified that while he did find some possible weakness of the right lower abdominal wall, plaintiff had no evidence of a hernia. It is noted that he says nothing of a weakness of the left abdominal wall. It is noted from his answers to questions propounded with the idea of ascertaining his opinion of an incomplete hernia that he does not agree with other doctors as to just what is a hernia; his idea of a hernia apparently being a condition where the protrusion comes through the tissue into the inguinal ring of the scrotum. There seems to be a difference among the doctors as to just what is a potential hernia, and incomplete hernia and a complete hernia. Some doctors practically exclude the two former kinds, and Dr. Fraser is apparently of the latter school.
Dr. Barkoff, one of defendant's camp doctors, examined plaintiff on May 14th, about 5 days after the accident, and found considerable tenderness in the right inguinal region, and diagnosed the case as a *Page 170 
possible indirect hernia, and after prescribing treatment, instructed the plaintiff to return in a few days. On the 17th plaintiff was again examined by Dr. Barkoff and Dr. Dew, another of defendant's camp doctors. They found no evidence of hernia, but advised plaintiff to continue heat treatment and rest. On the 19th plaintiff reported again to these two doctors, complaining of pain in his right inguinal region, and on this occasion he was advised to wear a suspensory, was given a prescription to relieve the pain, and was told to continue the application of heat and the rest treatment. It is true that these two doctors testified that they could not find that plaintiff had a hernia, but the symptoms which they found and the treatment which was prescribed indicate that they suspected a hernia.
From a review of this testimony, while it is true that there is a direct contradiction between the conclusions of Dr. Reid and Dr. Sanders on the one hand, and the other doctors on the other hand, we cannot find any manifest error in the findings of fact by the trial judge, who had the opportunity of seeing and hearing the witnesses. He must have believed the testimony of the plaintiff to the effect that he was hurt while lifting and carrying the heavy metal door. Moreover, there is nothing in the record to indicate that plaintiff is malingering, but, on the contrary, it seems that he has made consistent statements with reference to his case, such as his statements to the various doctors as to when and how he was injured. True, there is a slight discrepancy between his testimony and that of Dr. Reid relative to the time he was first examined by this doctor, but we do not feel that this is due to any willful misstatement. Furthermore, even considering the medical testimony alone, while there is a difference, as aforesaid, in the diagnoses of the various doctors, the fact remains that they did find something wrong with plaintiff, whether it is called an incomplete hernia or not, and the fact remains that the preponderance of the evidence is to the effect that this condition resulted from the accident, as set forth by plaintiff, and that he has been unable to perform his work since the day of that accident.
From these considerations we can find no reason to disagree with the District Court and the judgment is therefore affirmed.