LABORDE, Judge.
Bobbie J. Bell instituted this suit for workmen’s compensation benefits, plus penalties and attorney’s fees. The defendant is Georgia Casualty and Surety Company (Georgia Casualty), the compensation insurer of plaintiff’s employer. From a judgment sustaining Georgia Casualty’s plea of prematurity and dismissing the suit, Bell appeals. We affirm. We hold that under LSA-R.S. 23:1314, Bell’s suit was premature and the trial court was correct in ordering its dismissal.
For purposes of the plea of prematurity, the facts are that plaintiff was seriously injured on February 13, 1980, while working for Thaxton and Sons Sawmill, Inc. Shortly after the injury, Georgia Casualty commenced paying Bell workmen’s compensation benefits at the rate of $83.33 per week. This rate was established after Zo-nie Harris, a claims representative for Georgia Casualty, conducted an investigation and spoke with Bell and his employer, Harvey Thaxton. Harris then concluded that *769 Bell was employed on a part-time basis working five hours per day, five days per week and earning a maximum of $125 per week. Computing 66%% of Bell’s wages as required by the compensation act, Harris arrived at a compensation rate of $83.33 per week.
On July 8, 1980, Bell’s attorney notified Harris by letter that the compensation rate was erroneously based on an average of twenty-five hours actually worked rather than the appropriate fourty-hour week according to the compensation act’s formula. Demand, on Bell’s behalf, was made for an increase of $50.00 per week plus the deficiency accumulated from the date of the injury.
On August 15, 1980, in a letter to Bell’s counsel, Harris acknowledged receipt of the earlier letter adding that he would be in the area in a week and would at that time stop by the office in order to go over Bell’s file.
In the meantime, Bell’s counsel mailed a suit to the court which was filed on August 19,1980, alleging that Georgia Casualty had refused to pay the correct compensation rate and praying for benefits, penalties and attorney’s fees.
On August 28, 1980, upon the advice of counsel, Georgia Casualty increased the weekly compensation rate to the correct amount of $133.33 and paid $1400.00 to bring the compensation benefits current at the correct rate. This sum was accepted by Bell.
On September 22, 1980, Georgia Casualty filed its plea of prematurity and an answer, alleging that it never refused to pay the correct compensation rate, that it corrected a simple clerical mistake in the calculation of Bell’s weekly compensation benefits and made all payments due Bell by the time of trial, and that it paid all medical and travel expenses to its knowledge incurred by Bell.
The trial court sustained the plea of prematurity and dismissed the lawsuit, without prejudice, requiring Georgia Casualty to pay all costs as it was their mistake which precipitated Bell’s filing the suit.
On appeal, Bell urges that the trial court erred in sustaining the plea of prematurity.
In the interest, of encouraging prompt attention to claims of employees, the compensation act provides that the insurer is immune from suit so long as, among others, it is paying the maximum amount of compensation to which the employee is entitled. Under LSA-R.S. 23:1314, the insurer is permitted to interpose a dilatory exception of prematurity to an employee’s petition which fails to allege that the insurer has not complied with this requirement, or makes such allegations “without reasonable cause or foundation in fact.”[1] Louisiana Civil Law Treatise, Workers’ Compensation, Malone and Johnson, 1980 Edition, § 383, p. 233.
While there is room for considerable disagreement about the type of case in which this provision should apply, it is agreed that the insurer who is performing in good faith and attempting to carry out its responsibilities under the act would not be vexed with unnecessary litigation. Nevertheless, prematurity must be determined according to those circumstances of each case as they exist at the time suit was filed. Jack v. Fidelity and Casualty Co. of New York, 306 So.2d 806 (La.App. 3rd Cir. 1975), appeal after remand 326 So.2d 584, cert. denied 330 So.2d 295 (La.1976); Vidrine v. Argonaut-Southwest Ins. Co., 166 So.2d 287 (La.App. 3rd Cir. 1964).
With these principles in mind, we return to the facts of the instant case. Upon learning of Bell’s injury, Georgia Casualty *770 conducted a prompt investigation followed by prompt, although incorrect, weekly payments. In addition, Georgia Casualty provided prompt payment of Bell’s medical bills which at the time of trial totaled in excess of $23,322.17.
At the trial, Georgia Casualty’s claims adjuster, Harris, explained the reason for the approximate one month delay between notice of the incorrect rate and response to that notice. Harris testified that he is not an attorney and he was without authority to make the change without advice from Georgia Casualty’s general counsel, Mr. Lestage. Lestage, however, was on vacation during that time. When Lestage returned, Harris met with him and upon his advice, the mistake was corrected, the new compensation rate was paid, and the deficiency was made current. Harris also explained that he did not, from reading the letter from Bell’s counsel, get the impression that a suit was imminent. Instead, he felt that they would meet and discuss the matter and properly make the adjustment at the meeting.
The trial court, at the close of the evidence stated:
“THE COURT: As I appreciate the law in this area, the insurer is not penalized for making a mistake in the amount of the payment if it is shown that he acted in good, the insurance company acted in good faith; that the insurance company otherwise cooperated in all other respects. Only those situations where the insurance company has been shown to have been unreasonably obstinate in its refusal to pay any workman’s compensation or to pay the correct amount. I think it has been shown that there was no unreasonable action under the circumstances on the insurer’s part in this case. True, they erroneously paid comp initially but as soon as the error could be rectified, they brought the amount current and have since paid the correct weekly amount plus all medical bills that have been presented to them by the claimant. I do not think that the adjuster acted unreasonably in waiting to talk to Mr. Lestage. He had been dealing with him habitually in the past on these matters and apparently Mr. Lestage was identified by his employer as the lawyer to consult in these matters. Considering, therefore, the fact that the insurance company has, in fact, paid every claim presented to it to date, has rectified its mistake within a reasonable period of time, allowing for consultation with counsel, I find that the Exception of Prematurity should be sustained. However, feel that the company should bear the cost of the dismissal pursuant to the Exception of Prematurity and so order. It was their mistake that brought on the filing of the suit.” (Tr. 20-21)
Furthermore, this court has sustained a plea of prematurity where under similar circumstances to those here presented, the insurer made a clerical error in arriving at the compensation rate, but had in all other respects cooperated fully. Hadwin v. American Mutual Liability Ins. Co., 171 So.2d 776 (La.App. 3rd Cir. 1965).
Upon our review, we feel the record reveals good faith and reasonableness in Georgia Casualty’s dealings with Bell. Upon learning of the error, it corrected the rate and made up the deficiency. In addition, it has throughout manifested a desire to cooperate fully with Bell.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff.
AFFIRMED.

. LSA-R.S. 23:1314:
“Unless ... it is alleged . .. that the employee or the dependents is not being or has not been paid, and that the employer has refused to pay, the maximum percent of wages to which petitioner is entitled ... the presentation or filing of such petition shall be premature and shall be dismissed; when such allegations are contained in such petition and are denied by the employer at the time fixed thereunder by the court, if it be shown that such allegations are without reasonable cause or foundation in fact, such petition shall be dismissed; and the question of whether or not such allegations] of nonpayment ... is justified under the facts shall be determined by the court before proceeding with the hearing of other issues involved.”